## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

JOYCE VALLONE and ERASMUS
IKOGOR, individually and on behalf of all
others similarly situated,

      Plaintiff,

v.

THE CJS SOLUTIONS GROUP, LLC,
d/b/a THE HCI GROUP,

      Defendant.

Civil No.


**COLLECTIVE AND CLASS ACTION
COMPLAINT AND JURY DEMAND**

---

Plaintiffs Joyce Vallone and Erasmus Ikogor (collectively "Plaintiffs"), through their undersigned counsel, on behalf of themselves and all others similarly situated, file this nationwide collective action and state law class action Complaint against Defendant The CJS Solutions Group, LLC d/b/a The HCI Group ("Defendant" or "HCI"), for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*, and Minnesota and New York state laws. Plaintiffs allege that they and other similarly situated workers, as W-2 employees, did not receive applicable minimum wages and/or overtime compensation for all of their hours worked. The following allegations are based on personal knowledge and information and belief as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## <u>SUMMARY OF CLAIMS</u>

1.    Defendant violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and certain states law by failing to pay Plaintiffs and the putative

collective/class members (as defined below) applicable minimum and/or overtime wages for non-travel hours worked and/or for failing to pay anything for certain out-of-town travel hours.

## JURISDICTION, SUPPLEMENTAL JURISDICTION AND VENUE

2.  Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court also has supplemental jurisdiction over Plaintiffs' state law claims pursuant 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

3.  Venue in this Court is proper pursuant to 28 U.S.C. § 1391, since a substantial part of the events giving rise to Plaintiff's claims occurred within this District, and Defendant conducts business in this judicial District. Specifically, Plaintiffs Vallone and Ikogor performed work for Defendant at The Mayo Clinic in Rochester, Minnesota.

## PARTIES

4.  Plaintiff Vallone is a Rochester, New York resident who worked for HCI in April and May 2018, providing training to new users on how to use commercial software. The new users of the software were employees of Defendant's clients.

5.  Plaintiff Vallone worked for HCI in Minnesota. At all relevant times, Plaintiff Vallone has been an employee who was employed by Defendant within the meaning of 29 U.S.C. § 203(e) and (g), and corresponding state law.

6.  Plaintiff Ikogor is a Boynton, Florida resident who worked for HCI in 2017 and

2

2018, providing training to new users on how to use commercial software. The new users of the software were employees of Defendant's clients.

7.  Plaintiff Ikogor worked for HCI in several states, including Missouri, Minnesota and New York. At all relevant times, Plaintiff Ikogor has been an employee who was employed by Defendant within the meaning of 29 U.S.C. § 203(e) and (g), and corresponding state law.

8.  Pursuant to 29 U.S.C. § 216(b), Plaintiffs Vallone and Ikogor have consented in writing to participate in this action. *See* Exhibit A.

9.  At all relevant times, HCI was Plaintiffs' "employer" as defined by the FLSA, 29 U.S.C. §203(d).

10. Defendant is a corporation providing information technology educational services for the healthcare industry across the country. HCI maintains its corporate headquarters in Jacksonville, Florida and is incorporated in Florida

11. HCI engaged in interstate commerce or otherwise conducted activities within the scope of 29 U.S.C. §§ 206-207, and its annual gross volume of sales or business done is in excess of $500,000.

12. HCI's main function is to recruit and hire individuals like Plaintiffs who primarily train hospital employees (new users) how to use certain commercial electronic record keeping software during "go live" events. HCI carries out and coordinates its main function from its principal place of business located in Jacksonville, Florida.

13. HCI provides staffing services to customers throughout the United States.

## PROPOSED COLLECTIVE AND CLASS DEFINITIONS

14.     Plaintiff Vallone brings Count I of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of herself and the following workers (the "FLSA Minimum Wage Class"):

> All similarly situated individuals who were not paid all applicable minimum wages while performing work for HCI in the **United States** relating to electronic record keeping systems, for the maximum limitations period as may be allowed by law.

15.     Plaintiffs Vallone and Ikogor bring Count II of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of themselves and the following workers (the "FLSA Overtime Class"):

> All similarly situated individuals who were not paid all applicable overtime wages while performing work for HCI in the **United States** relating to electronic record keeping systems, for the maximum limitations period as may be allowed by law.

16.     Plaintiff Vallone brings Counts III and V of this lawsuit as a class action on behalf of herself and the following workers (the "Minnesota Minimum Wage Class"):

> All similarly situated individuals who were not paid all applicable minimum wages while performing work for HCI in the State of **Minnesota** relating to electronic record keeping systems, for the maximum limitations period as may be allowed by law.

17.     Plaintiffs Vallone and Ikogor bring Counts IV and V of this lawsuit as a class action on behalf of themselves and the following workers (the "Minnesota Overtime Class"):

> All similarly situated individuals who were not paid all applicable overtime wages while performing work for HCI in the State of **Minnesota** relating to electronic record keeping systems, for the maximum limitations period as may be allowed by law.

18.     Plaintiff Ikogor brings Count VI of this lawsuit as a class action on behalf of

himself and the following workers (the "New York Overtime Class"):

> All similarly situated individuals who were not paid all applicable
> overtime wages while performing work for HCI in the State of **New
> York** relating to electronic record keeping systems for the maximum
> limitations period as may be allowed by law.

19.     The categories of workers described in the foregoing paragraphs will be

colloquially referred to as "Classes" in this Complaint.

20.     Plaintiff Vallone is a member of the FLSA and Minnesota Classes she seeks to

represent because she was employed by Defendant under applicable law and

worked more than forty (40) and/or forty-eight (48) hours per week in the State of

Minnesota within the applicable limitation's period. Plaintiff was not fully paid:

(1) minimum wages for out-of-town travel during normal business hours that

occurred on a workday that both started and ended her compensable workweek;

and/or (2) overtime pay, including for out-of-town travel that occurred during

normal business hours.

21.     Plaintiff Ikogor is a member of the FLSA, Minnesota and New York Classes he

seeks to represent because he was employed by Defendant under applicable law

and worked more than forty (40) and/or forty-eight (48) hours per week in the

States of Minnesota and New York, among others, within the applicable

limitation's periods. Plaintiff was not fully paid overtime pay, including when he

engaged in out-of-town travel for Defendant.

22.     Excluded   from   the   defined   Classes   are   Defendant;   Defendant's   legal

representatives, officers, directors, assigns, and successors; any individual who has, or who at any time during the applicable temporal period has had, a controlling interest in Defendant; and the judges (and immediate family members) to whom this case is assigned.

23. Plaintiffs reserve the right to refine and amend the definitions of the Classes prior to notice or class certification.

## **FACTS**

24. Plaintiffs worked for Defendant during the applicable statute of limitations periods under the FLSA and Minnesota and New York state laws referred to herein.

25. Plaintiffs estimate that the putative Classes will include over one thousand (1000) similarly situated workers.

26. Plaintiffs and other similarly situated workers were compensated by Defendant on an hourly basis.

27. Plaintiffs and other similarly situated workers were not paid on a salary basis.

28. Plaintiffs and other similarly situated workers regularly worked over forty (40) and/or forty-eight (48) hours during the regular workweek. Plaintiffs and other similarly situated workers routinely worked seven (7) days per week, twelve (12) hours per day.

29. Defendant is an information technology firm that provides training and support to employees of hospitals and other medical facilities as those employees begin to learn how to use new commercial electronic record keeping software.

30.     The process of changing software systems, and acclimating users of an old software system to a newly installed software system is sometimes referred to as a "go live" event.

31.     Plaintiffs and other similarly situated workers generally have to travel out-of-town to the medical facilities of Defendant's clients when working for Defendant.

32.     The aforementioned out-of-town travel by Plaintiffs and other similarly situated workers was for the benefit of Defendant.

33.     Plaintiffs and other similarly situated workers were not compensated for such out-of-town travel time, even when it took place during normal business hours, including hours worked over forty (40) and/or forty-eight (48) each week.

34.     Defendant is compensated by its clients for the time spent by its workers, like Plaintiffs, to train new users how to use software and to otherwise assist in the medical facilities' "go live" events.

35.     Additionally, Plaintiffs and other similarly situated workers were not paid for the first scheduled day of Defendant's required orientation for the Mayo Clinic "go live" event in April-May 2018, which was abruptly cancelled the night before the orientation training after Plaintiffs and other similarly situated workers had already traveled to Rochester, Minnesota for the "go live" event. As such, the time these workers were "engaged to wait" by Defendant is compensable.

36.     Plaintiffs and other similarly situated workers did not meet any test for exemption under applicable law.

37.     Defendant had no good faith basis to believe that Plaintiffs and other similarly situated workers were exempt from the overtime requirements of the FLSA or applicable state laws.

38.     Defendant had no good faith basis to believe that Plaintiffs and other similarly situated workers should not have been paid for the time they were engaged to wait by Defendant due to the canceled orientation training day during the Mayo Clinic go live or for the time they engaged in out-of-town travel on behalf of Defendant, including travel during normal business hours.

39.     Defendant either knew or acted with reckless disregard of applicable laws, regulations and administrative guidelines in failing to pay Plaintiffs and other similarly situated workers overtime compensation. Defendant either knew or acted with reckless disregard of applicable laws, regulations and administrative guidelines in failing to pay Plaintiffs and other similarly situated workers for the time they were engaged to wait by Defendant and for time spent on out-of-town travel during normal business hours.

40.     Defendant had actual knowledge that Plaintiffs and other similarly situated workers worked overtime hours.  Defendant had actual knowledge that Plaintiffs and other similarly situated workers were not paid for out-of-town travel including during normal business hours.

41.     Defendant further had actual knowledge that it had impermissibly engaged Plaintiffs and other similarly situated workers to wait without proper compensation by cancelling the first day of required orientation training after the

workers had already traveled to the out-of-town location of the Mayo Clinic "go live" event in Rochester, Minnesota.

42. Defendant financially benefitted by failing to pay Plaintiffs and other similarly situated workers applicable minimum and/or overtime wages, and by failing to pay for time spent for applicable out-of-town travel including during normal business hours.

43. Defendant's conduct as alleged herein was willful and has damaged Plaintiff and other similarly situated workers. Defendant knew, and was aware at all times, of the alleged FLSA and Minnesota and New York state law violations.

## COLLECTIVE AND CLASS ALLEGATIONS

44. Defendant engaged in a common scheme to avoid paying Plaintiffs and other similarly situated workers applicable minimum and/or overtime wages for time the workers spent engaged to wait by HCI and time the workers spent in out-of-town travel during normal business hours, including in workweeks during which they worked in excess of forty (40) and/or forty-eight (48) hours per week.

45. Plaintiffs and other similarly situated workers should be allowed to proceed collectively because they were all paid an hourly rate; they worked in excess of forty (40) and/or forty-eight (48) hours per week in the United States, including in Minnesota and New York; Defendant did not pay Plaintiffs and other similarly situated workers applicable minimum and/or overtime wages for time the workers were engaged to wait by Defendant and for out-of-town travel during normal business hours.

46. The members of the Classes are readily ascertainable from Defendant's records.

47. The members of the respective Classes, separately, are so numerous that joinder of all members is impracticable.

48. Plaintiffs' claims and the relief they seek are typical of those claims of the similarly situated workers, and the relief they would seek. On information and belief, the defenses to be asserted by the Defendant against the Plaintiffs will be typical of the defenses to be asserted by the Defendant against the similarly situated workers.

49. Plaintiffs are able to fairly and adequately protect the interests of the putative Classes. They have no interests adverse to workers in the defined Classes.

50. Plaintiffs' attorneys are experienced and competent in both class action litigation in general, and employment and wage and hour litigation specifically. Larson · King, LLP has previously represented many plaintiffs, classes and collectives in wage and hour cases, including against this Defendant.

51. Collective and class action treatment is superior to individual litigation.  It will permit a large number of similarly situated persons to prosecute their common claims and oppose common defenses in a single forum without the unnecessary duplication of efforts and expense associate with individual lawsuits.

52. The separate claims asserted by the workers in the Classes are relatively small, low value claims.

53. Common questions of law and fact exist as to each of the separate Classes. These issues predominate.

54.    The common questions of fact include but are not limited to:

- Whether Defendant is liable under the FLSA for minimum wage, overtime and/or travel time pay;

- Whether Defendant is liable under the applicable state laws for minimum wage, overtime and/or travel time pay;

- Whether Defendant accurately recorded and retained accurate records of Plaintiff's and other similarly situated workers' compensable hours worked as required by Minn. Stat. § 177.30 and New York Labor Law Art. VI, § 195(3); and

- Whether Defendant's management's conduct relating to the wage and hour issues presented herein properly subjects Defendant to liquidated damages, punitive damages, statutory penalties or extended limitations periods under applicable federal or state laws.

55.    These issues can be resolved by common, class-wide proof.

56.    Management of this lawsuit, if allowed to proceed collectively and/or as a class action under Federal Rule of Civil Procedure 23, would be reasonable and efficient.

## COUNT I
## FAILURE TO PAY MINIMUM WAGE UNDER FLSA

57.    Plaintiff Vallone reasserts and re-alleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

58.    Defendant is subject to the wage requirements of the FLSA because Defendant is

an "employer" under 29 U.S.C. § 203(d).

59.    Defendant is engaged in commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

60.    Plaintiffs and other similarly situated workers are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b), and are covered employees entitled to the FLSA's protections.

61.    The FLSA requires that covered, nonexempt employees receive at least the federal minimum wage of $7.25 per hour for the first 40 hours worked in a workweek. 29 U.S.C. §§ 206(a)(1)(C) and 207(a)(1).

62.    "[I]f the employee's total wages for the workweek divided by compensable hours equal or exceed the applicable minimum wage, the employee has been paid in compliance with [§ 206]." WHD Opinion Letter FLSA2018-28 (Dec. 21, 2018).

63.    Upon information and belief, Defendant maintained a uniform policy or practice of not paying ATEs for time ATEs spent in out-of-town travel during normal business hours.

64.    Defendant violated the FLSA by allowing Plaintiff Vallone and other similarly situated workers to travel out-of-town during normal business hours without compensation, including proper minimum wage compensation, on such travel days that both begin and end the worker's compensable workweek.

65.    For example, upon information and belief, Defendant's workweek is Thursday through Wednesday. Plaintiff Vallone engaged in out-of-town travel during normal business hours when she traveled home from the Mayo Clinic go-live

event in Rochester, Minnesota, to Rochester, New York, on Thursday, May 17, 2018.

66. Defendant violated the FLSA by failing to pay Plaintiff Vallone at least the federal minimum wage for such out-of-town travel during normal business hours. 29 C.F.R. § 785.39. In fact, Plaintiff Vallone received no compensation from Defendant for such travel hours.

67. Plaintiff Vallone and similarly situated workers are not exempt from the requirements of the FLSA.

68. The foregoing actions of Defendant violated the FLSA.

69. Defendant's actions were willful and not in good faith.

70. Plaintiff Vallone and other similarly situated workers have been harmed as a direct and proximate result of Defendant's unlawful conduct.

71. Defendant is liable to Plaintiff Vallone and other similarly situated workers for actual damages, liquidated damages and equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, disbursements, expenses and prejudgment interest as may be allowed by law, and such other and further relief as the Court deems appropriate and just.

**COUNT II**
**FAILURE TO PAY OVERTIME WAGES**
**AND FOR TRAVEL TIME UNDER THE FLSA**

72. Plaintiffs Vallone and Ikogor reassert and re-allege the allegations set forth in each of the above paragraphs as though fully set forth herein.

73.  Defendant is subject to the wage requirements of the FLSA because Defendant is an "employer" under 29 U.S.C. § 203(d).

74.  Defendant is engaged in commerce within the meaning of Section 3(s)(1)(A), 29 U.S.C. § 203(s)(1)(A).

75.  Plaintiffs and other similarly situated workers are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b), and are covered employees entitled to the FLSA's protections.

76.  FLSA Section 207(a)(1) states that an employee must be paid an overtime rate, equal to at least one- and one-half times the employee's regular rate of pay, for all hours worked in excess of forty (40) hours per workweek.

77.  An employee "engaged to wait" is generally considered to be working under the FLSA. *See generally* 29 C.F.R. § 785.14 to 785.17.

78.  Defendant violated the FLSA by allowing Plaintiffs and other similarly situated workers to work overtime hours per workweek without paying them full overtime wages for all hours worked and/or engaging them to wait out-of-town for work without paying them for such time.

79.  Plaintiffs and other similarly situated workers routinely worked in excess of forty (40) hours per week, but were not paid overtime wages of one- and one-half times their regular hourly rates for non-travel hours relating to the cancelled Mayo Clinic orientation training scheduled for April 30, 2018.

80.  Additionally, or in the alternative, Defendant violated the FLSA by allowing Plaintiffs and other similarly situated workers to travel out-of-town during

normal business hours without compensation, including proper overtime compensation. 29 C.F.R. § 785.39.

81. Defendant did not compensate Plaintiffs and similarly situated workers for out-of-town travel during normal business hours. 29 C.F.R. § 785.39.

82. Plaintiffs and similarly situated workers are not exempt from the requirements of the FLSA.

83. The foregoing actions of Defendant violated the FLSA.

84. Defendant's actions were willful and not in good faith.

85. Plaintiffs and other similarly situated workers have been harmed as a direct and proximate result of Defendant's unlawful conduct.

86. Defendant is liable to Plaintiffs and other similarly situated workers for actual damages, liquidated damages and equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, disbursements, expenses and prejudgment interest as may be allowed by law, and such other and further relief as the Court deems appropriate and just.

## COUNT III
## VIOLATION OF MINNESOTA FAIR LABOR STANDARDS ACT
## MINIMUM WAGE REQUIREMENTS

87. Plaintiff Vallone reasserts and re-alleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

88. Minimum wages due to Minnesota workers is governed by the Minnesota Fair Labor Standards Act, Minn. Stat. Minn. Stat. §§ 177.21, *et seq.* (the "MFLSA").

89.  Defendant is subject to the minimum wage requirements of the MFLSA because Defendant is an "employer" under the MFLSA. Minn. Stat. § 177.23, subd. 6. More specifically, Defendant is a large employer within the meaning of Minn. Stat. § 177.24, subd. 1(a)(1).

90.  Between August 1, 2015 and August 1, 2016, members of the Minnesota Minimum Wage Class were entitled to be paid no less than $9.00 per hour for each hour they worked for Defendant. Minn. Stat. § 177.24, subd. 1(b)(1)(ii).

91.  Between August 1, 2016 and January 1, 2018, members of the Minnesota Minimum Wage Class were entitled to be paid no less than $9.50 per hour for each hour they worked for Defendant. Minn. Stat. § 177.24, subd. 1(b)(1)(iii).

92.  After January 1, 2018, Plaintiff Vallone and members of the Minnesota Minimum Wage Class were entitled to be paid no less than $9.65 per hour for each hour they worked for Defendant. Minn. Stat. § 177.24, subd. 1(b)(1)(iv) and (f); *see also* Minn. Dep't. of Labor and Industry, *New Year, New Minimum Wage Rate as of Jan. 1, 2018* (Dec. 28, 2017), https://www.dli.mn.gov/news/new-year-new-minimum-wage-rate-jan-1-2018.

93.  Plaintiff Vallone and the Minnesota Minimum Wage Class were entitled to compensation at the statutory minimum wage for all hours worked including out-of-town travel during normal business hours. Minn. R. 5200.0120, sub. 1.

94.  Defendant violated Minn. Stat. § 177.24 by allowing Plaintiff Vallone and other similarly situated workers to travel out-of-town during normal business hours

without compensation, including proper minimum wage compensation, on such travel days that both begin and end the worker's compensable workweek.

95. Defendant's actions were willful and not the result of mistake or inadvertence. *See* Minn. Stat. §§ 177.27, subd. 8, and 541.07(5).

96. Plaintiff Vallone and members of the Minnesota Minimum Wage Class have been harmed as a direct and proximate result of Defendant's unlawful conduct.

97. Defendant is liable to Plaintiffs and the Minnesota Minimum Wage Class for compensatory and liquidating damages, plus costs, disbursements, witness and attorneys' fees, pursuant to Minn. Stat. § 177.27, subd. 8 and 10.

**COUNT IV**
**VIOLATION OF MINNESOTA FAIR LABOR STANDARDS ACT OVERTIME**
**REQUIREMENTS**

98. Plaintiffs Vallone and Ikogor reassert and re-allege the allegations set forth in each of the above paragraphs as though fully set forth herein.

99. The MFLSA requires that employees be compensated for all hours worked in excess of forty-eight (48) hours per week at a rate not less than one and one-half (1 ½) times the regular rate at which he is employed.  Minn. Stat. § 177.25, subd. 1.

100. Defendant is subject to the overtime wage requirements of the MFLSA because it is an "employer" under the MFLSA.  Minn. Stat. § 177.23, subd. 6.

101. Plaintiffs and the Minnesota Overtime Class are not exempt from the requirements of the MFLSA.

102.   Defendant is required by MFLSA to pay Plaintiffs and the Minnesota Overtime Class time and one- half (1 ½) the regular rate of pay for any work in excess of forty-eight (48) hours. Defendant violated Plaintiff and the Minnesota Class Members' rights by failing to pay them the legally required amount of overtime compensation.  Minn. Stat. § 177.25, subd. 1.

103.   Specifically, Defendant, pursuant to its policies and practices, failed and refused to pay overtime wages to Plaintiffs and the Minnesota Overtime Class for all their overtime hours worked by failing to pay anything for certain out-of-town travel hours and out-of-town time spent engaged to wait. Minn. R. 5200.0120, sub. 1.

104.   Under Minnesota state law, if an employer requires an employee to attend an out-of-town business meeting, training session or any other event, the employer cannot disclaim an obligation to pay for the employee's time in getting to and from the location of that event. Minn. R. 5200.0120, sub. 1. Time spent driving, or as a passenger on an airplane, train, bus, taxi cab or car, or other mode of transportation, in traveling to and from this out-of-town event, and time spent waiting to purchase a ticket, check baggage, or get on board is, under such circumstances, time involved in the performance of duties in connection with the employee's employment—*i.e.*, time spent carrying out the employer's directives—and thus, can only be characterized as time in which the employee is subject to the employer's control.

18

105.   In violating the MFLSA, Defendant acted willfully and with reckless disregard of clearly applicable MFLSA provisions. *See* Minn. Stat. §§ 177.27, subd. 8, and 541.07(5).

106.   Plaintiffs and the Minnesota Overtime Class have been harmed as a direct and proximate result of Defendant's unlawful conduct.

107.   Defendant is liable to Plaintiffs and the Minnesota Overtime Class for compensatory and liquidating damages, plus costs, disbursements, witness and attorneys' fees, pursuant to Minn. Stat. § 177.27, subd. 8 and 10.

## COUNT V
## VIOLATION OF MINNESOTA FAIR LABOR STANDARDS ACT RECORDKEEPING REQUIREMENT

108.   Plaintiffs Vallone and Ikogor reassert and re-allege the allegations set forth in each of the above paragraphs as though fully set forth herein.

109.   Minn. Stat. § 177.30 requires employers subject to the MFLSA to make and keep a record of hours worked each day and each workweek by their employees.

110.   Defendant has violated Minn. Stat. § 177.30 by failing to make and keep records of the time Plaintiffs and other similarly situated workers spent performing duties as described in this Complaint—namely, required out-of-town travel hours and out-of-town time spent engaged by Defendant to wait.

111.   As a direct and approximate result of Defendant's unlawful conduct, Plaintiffs and other similarly situated workers have suffered damages.

112.   Under Minn. Stat. § 177.27, Subd. 7, as incorporated through Minn. Stat. § 177.27, Subd. 8, Defendant is subject to a penalty of up to $1,000 for each

violation for each affected employee. Plaintiffs and other similarly situated workers are also entitled to attorneys' fees and costs incurred in connection with this claim under Minn. Stat. § 177.27, Subd. 10.

## COUNT VI
## FAILURE TO PAY OVERTIME WAGES AND
## FOR TRAVEL TIME UNDER NEW YORK LAW

113.   Plaintiff Ikogor reasserts and re-alleges the allegations set forth in each of the above paragraphs as though fully set forth herein.

114.   At all relevant times, Defendant was an "employer" under New York wage and hour law.

115.   At all relevant times, Plaintiff Ikogor and members of the proposed New York class were "employees" under applicable New York law, including under the "right to control" test and as a matter of economic reality.

116.   New York law requires employers to pay employees for overtime wages for any hours worked in excess of forty (40) hours per workweek at a rate not less than one-and-one-half times the regular hourly wage. 12 N.Y. Comp. Codes R. & Regs. Pt. 142.2.2.

117.   Defendant failed to pay Plaintiff Ikogor and members of the proposed New York class for all such hours worked over 40 hours and/or at time-and-a-half the workers regular rate.

118.   New York wage and hour law requires hours spent on overnight trips to be compensable during normal business hours.

119.  Defendant's failure to pay for all hours worked was not in good faith, and Plaintiff Ikogor and members of the proposed New York class are entitled to liquidated damages.  N.Y. Lab. Law §§ 198(1)(a), (2) & (3).

120.  Plaintiff Ikogor and members of the proposed New York class routinely worked in excess of forty (40) hours per week in the State of New York, but were not paid overtime wages of one-and-one-half times their regular hourly rates for travel hours.

121.  Defendant violated New York law by allowing Plaintiff Ikogor and members of the proposed New York class to travel out-of-town to and from New York during normal business hours without any compensation, and not counting their out-of-town travel hours as hours worked.

122.  Because Defendant did not count or record all of the hours worked, it failed to keep records in accordance with New York Labor Law Art. VI, § 195(3), thereby allowing for penalties under Labor Law §198(1-d).

123.  Plaintiff Ikogor and members of the proposed New York class and other similarly situated workers are entitled to recover unpaid wages, liquidated damages, penalties, prejudgment interest as allowed by law, reasonable attorneys' fees, costs and disbursements, and such other and further relief as the Court deems appropriate and just.

## **JURY DEMAND**

Plaintiffs request a trial by jury on all of their claims.

21

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs seek the following relief on behalf of themselves and the respective Classes:

a.      An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b.      Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class Members;

c.      An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the proposed state Classes;

d.      Damages for unpaid overtime compensation including travel time and prejudgment interest to the fullest extent permitted under the law;

e.      Appropriate statutory penalties assessed against Defendant, including but not limited to, those under Minn. Stat. § 177.27, Subd. 7, as incorporated through Minn. Stat. § 177.27, Subd. 8, for each violation of the MFLSA's record keeping requirements;

f.      Appropriate statutory penalties assessed against Defendant, including but not limited to those under New York Labor Law Art. VI, §§ 195(3) and 198(1-d).

g.      Liquidated damages, penalties and punitive damages to the fullest extent permitted under the applicable laws;

h.      Litigation costs, disbursements, expenses, and attorneys' fees to the fullest extent permitted under the law; and

22

i.      Such other and further relief as this Court deems just and proper.


Dated:  June 10, 2019                         LARSON ● KING, LLP

                                              By: s/T. Joseph Snodgrass
                                              T. Joseph Snodgrass (MN #231071)
                                              Kelly A. Lelo (MN #330838)
                                              30 East Seventh St., Suite 2800
                                              St. Paul, MN  55101
                                              Tel: (651) 312-6500
                                              Fax: (651) 312-6618
                                              jsnodgrass@larsonking.com
                                              klelo@larsonking.com

                                              *Attorneys for Plaintiff and the Proposed Classes*

1856515