UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joyce Vallone and
Erasmus Igokor, individually
and on behalf of all others
similarly situated,

Civ. No. 19-1532 (PAM/DTS)

Plaintiffs,

v.

**MEMORANDUM AND ORDER**

The CJS Solutions Group, LLC
d/b/a The HCI Group,

Defendant.

---

This matter is before the Court on Plaintiffs' Motion for Conditional Certification. For the following reasons, the Motion is granted in part and denied in part.

**BACKGROUND**

Plaintiffs Joyce Vallone and Erasmus Ikogor worked for Defendant The CJS Solutions Group d/b/a The HCI Group ("HCI"). In late April and May 2018, Vallone worked at the Mayo Clinic in Rochester, assisting physicians, nurses, and others with the transition to a new computerized patient-management system. (Lelo Aff. (Docket No. 30) Ex. C (Vallone Decl.).) Ikogor also worked for HCI at Mayo during this time. (Id. Ex. D (Ikogor Decl.) ¶ 9.) In addition, Ikogor worked for HCI at hospitals in St. Louis and New York City. (Id.)

Plaintiffs contend that they were not paid for the time they spent traveling from remote locations—usually their homes—to the worksites and back to the remote location at the end of their assignments. They assert that the Fair Labor Standards Act ("FLSA") requires such payment. Plaintiffs also contend that they traveled to Rochester on April 29,

2018, at HCI's direction, only to have the training scheduled for April 30, 2018, cancelled abruptly late in the evening of April 29. HCI did not compensate them for April 30, despite that they were in Rochester waiting to work.

> Plaintiffs seek conditional certification of a FLSA class consisting of:
>
> all hourly paid, non-exempt, W-2 employees of The CJS Solutions Group, LLC, d/b/a The HCI Group ("HCI"), whose time was neither paid under the federal minimum wage or overtime laws: (1) while engaging in out-of-town travel (with a corresponding overnight stay), wherein the travel was undertaken during the employee's normal working hours; or (2) on April 30, 2018, at the Mayo Clinic location, for workers who did not live in the Rochester, Minnesota area.

The class period is from June 10, 2016, through the date of any order granting certification of the collective action. Plaintiffs also ask the Court to appoint them as collective action representatives and their counsel as class counsel, directing HCI to provide Plaintiffs with the names of all putative class members, directing that notice be provided to all these individuals in specific ways, and tolling the statute of limitations as of the date Plaintiffs filed the instant Motion.

**DISCUSSION**

FLSA contemplates collective actions when it states that "[a]n action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Yet "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing . . . ." Id. Thus, a "class" under FLSA is not the same as a class certified under Federal Rule of Civil Procedure 23. See Parker v. Rowland Express, Inc., 492 F. Supp. 2d 1159, 1163 (D. Minn. 2007) (Kyle, J.).

2

Because FLSA requires putative class members to affirmatively "opt-in," the Court may not only authorize but also facilitate the transmission of notice. But the Court may only do so if plaintiffs "first show that they are 'similarly situated to the employees whom they seek to represent.'" Id. (quoting Mares v. Caesars Entm't, Inc., No. 4:06-cv-0060, 2007 WL 118877, at *2 (S.D. Ind. Jan. 10, 2007)). Courts have adopted a two-stage process for determining whether a collective action is appropriate under that standard:

> At the initial stage, the court determines whether the class should be conditionally certified for notification and discovery purposes. At this conditional certification stage, the plaintiffs need only come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan. . . . At the second stage . . . the court uses a stricter standard for determining whether the putative class members are similarly situated and reconsiders whether the trial should proceed collectively or if it should be severed.

Frank v. Gold'n Plump Poultry, Inc., No. 14-1018, 2005 WL 2240336, at *2 (D. Minn. Sept. 14, 2005) (Ericksen, J.) (internal citations omitted). "[T]he second stage occurs after discovery, usually when the defendant moves to decertify the class." Lyons v. Ameriprise Fin., Inc., No. 10-503, 2010 WL 3733565, at *2 (D. Minn. Sept. 20, 2010) (Kyle, J.) (citation omitted). The plaintiffs' burden at the first stage is a light one. Smith v. Heartland Auto. Servs., Inc., 404 F. Supp. 2d 1144, 1149 (D. Minn. 2005) (Kyle, J.)

HCI argues that conditional certification is inappropriate because the Court lacks jurisdiction over any dispute that does not involve a Minnesota plaintiff or work performed in Minnesota and because many members of the putative class signed arbitration agreements that prohibit them from bringing lawsuits such as this. HCI also contends that there are too many other individualized inquiries at play, such as whether the putative

3

plaintiff's travel occurred during their "normal working hours" as the regulations require.[1] See 29 C.F.R. § 785.39 ("Travel away from home is clearly worktime when it cuts across the employee's workday.").

**A.    Jurisdiction**

HCI argues that the Court lacks specific personal jurisdiction over HCI for any putative Plaintiff who worked outside the state of Minnesota.[2] Plaintiffs assert that HCI has waived this defense by not raising it in its answer and affirmative defenses. HCI responds that its answer stated that any collective action would constitute a denial of HCI's rights under the Due Process Clause. (Answer ¶ 10.) While the Court would prefer that parties more explicitly raise jurisdiction as a defense in their pleadings, the Court is reluctant to deprive a party of its constitutional rights on the basis of inartful pleadings. HCI has not waived its right to assert lack of jurisdiction as a defense to this collective action.

Due process requires that a court has specific jurisdiction over a defendant in a mass action only if the action arises out of or relates to that defendant's contacts with the forum. Bristol-Meyers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty., 137 S. Ct. 1773, 1780

---

[1] HCI makes two additional arguments. First, it contends that the time spent traveling is not compensable because Plaintiffs were not employees of HCI on the days they traveled to and from their worksite. According to HCI, each individual's employment relationship with HCI did not begin until the first day that individual performed work on the jobsite for HCI. But this argument asks for a legal determination that simply is inappropriate for a preliminary ruling such as this, and the Court will not address it further. Second, HCI argues that FLSA does not apply to the time the workers spent commuting to their jobsites on a daily basis. But Plaintiffs make no such claim. Rather, their claims are limited to travel time to and from remote jobsites at the beginning and end of their work assignments, and a distinct claim about cancelled training on April 30, 2018.

[2] Plaintiffs do not dispute that Minnesota lacks general personal jurisdiction over HCI, which is headquartered and has its principal place of business in Florida.

4

(2017) ("BMS"). In BMS, more than 600 plaintiffs brought eight separate lawsuits in California state court claiming that the drug Plavix injured them. Id. at 1777. But only 86 of the plaintiffs were California residents; the remaining 592 plaintiffs were from states other than California. Id. at 1778. BMS contested the California courts' jurisdiction, and the California Supreme Court ultimately determined that California could constitutionally exercise specific jurisdiction over BMS using the "sliding-scale" approach. Id. Under this approach, "a greater degree of contacts with the state compensates for a lesser degree of relation between those contacts and the allegedly illegal conduct." Knotts v. Nissan N. Am., Inc., 346 F. Supp. 3d 1310, 1329 (D. Minn. 2018) (Nelson, J.). The California Supreme Court found that BMS's extensive contacts with the state and the similarities between the claims of non-residents and residents allowed California to exercise specific jurisdiction over BMS, even though there was little direct connection between BMS's contacts and the non-resident plaintiffs' claims. BMS, 137 S. Ct. at 1779.

The United States Supreme Court reversed, emphasizing that the exercise of specific jurisdiction requires that the lawsuit itself "aris[e] out of or relat[e] to the defendant's contacts with the forum." Id. at 1780 (quotation omitted) (emphasis omitted). "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" Id. (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

Plaintiffs point out that no federal Court of Appeals has extended BMS's holding to federal class actions or collective actions. In fact, another Judge in this District explicitly declined to extend BMS to Rule 23 class actions. Knotts, 246 F. Supp. 3d at 1332. That

5

decision, however, rested in large part on the difference between certified class actions, with the added due-process safeguards of Rule 23's requirements, and the mass action before the Supreme Court in BMS. Id. at 1333-34.

The instant matter is a FLSA collective action, not a Rule 23 class action. The due-process safeguards of Rule 23 are not yet applicable. And while it is true that very few federal courts have extended BMS to federal class actions, several have found that BMS applies to FLSA collective actions. E.g., Roy v. FedEx Ground Package Sys., Inc., 353 F. Supp. 3d 43, 55 (D. Mass. 2018); Maclin v. Reliable Reports of Tex., Inc., 314 F. Supp. 3d 845, 850 (N.D. Ohio 2018). A FLSA collective action, which requires potential plaintiffs to opt in, is more analogous to the individual plaintiffs at issue in the BMS litigation than to members of a certified Rule 23 class who must affirmatively opt out of the litigation. Roy, 353 F. Supp. 3d at 59-60. Thus, there are "meaningful differences" between Rule 23 class actions and a FLSA collective action or a mass action such as BMS. Knotts, 346 F. Supp. 2d at 1333. Because named plaintiffs in Rule 23 class actions are the only plaintiffs in the lawsuit, a court need only evaluate their claims to determine whether those claims arise out of or relate to the defendant's contacts with the forum. Id. But here, eight additional individuals have already filed consents to participate in the collective action, with more likely to follow after Court-issued notice of the action. (Docket Nos. 14, 16, 17, 27, 35, 46, 47.) The "underlying controversy" is therefore all individual Plaintiffs' claims against HCI. BMS, 137 S. Ct. at 1780 (quotation omitted). Only if those claims "arise out of or relate to" HCI's contacts with Minnesota can the Court constitutionally exercise jurisdiction over HCI. Id.

The weight of authority is that the strictures of BMS apply in the FLSA conditional certification context. Plaintiffs must establish that there is a connection between Minnesota and their individual claims against HCI. Here, that means that the Court has jurisdiction only over the claims of HCI workers who were assigned to the Mayo Clinic project or workers who are Minnesota residents. To the extent that Plaintiffs seek certification of a collective action that involves individuals other than Mayo Clinic workers or Minnesota residents, that request must be denied.

However, as discussed in more detail below, Plaintiffs have established that a collective action consisting of HCI's Mayo Clinic workers and Minnesota residents is appropriate. The Court requests that the parties agree on a new class definition encompassing the above limitations within ten days of the date of this Order. The Court will deny without prejudice Plaintiffs' request to toll the statute of limitations as of the date they filed the certification motion. Should the statute of limitations become relevant to any opt-in Plaintiff's claims, Plaintiffs may re-raise the issue at that point.

**B.     Arbitration**

HCI urges the Court to decline to certify any collective action, because some putative Plaintiffs ostensibly signed arbitration agreements with HCI starting in October 2018. But October 2018 is five months after HCI finished its work at the Mayo Clinic. Whether an arbitration agreement signed months after the dispute arose is enforceable is an open question. And HCI concedes that less than half of the putative collective for which Plaintiffs initially requested certification signed an arbitration agreement. This case is thus unlike Bigger v. Facebook, Inc., --- F.3d ---, 2020 WL 401804 (7th Cir. Jan. 24, 2020), in

which most of the putative collective had entered into arbitration agreements, presumably at the inception of their employment and before the FLSA dispute arose.

In addition, HCI has moved the Court to compel arbitration. (Docket No. 36.) The parties may address in the briefing on that Motion whether any specific members of the narrowed collective are subject to valid arbitration agreements and thus should not be part of the collective. The Court will not deny conditional certification on this basis.

## C.  Similarly Situated

"At this conditional certification stage, the plaintiffs need only come forward with evidence establishing a colorable basis for their claim that the putative class members were together the victims of a single decision, policy, or plan." Thompson, 2009 WL 130069, at *5. "The [C]ourt does not make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties at this initial stage." Burch v. Qwest Commc'ns Int'l, Inc., 500 F. Supp. 2d 1181, 1186 (D. Minn. 2007) (Davis, J.) (quoting Dege v. Hutchinson Tech., Inc., No. 06-3754, 2007 WL 586787, at *1 (D. Minn. Feb. 22, 2007) (Frank, J.)). Although "the barrier to preliminary certification is low," Keef v. M.A. Mortenson Co., No. 07-cv-3815, 2008 WL 3166302, at *2 (D. Minn. Aug. 4, 2008) (Rosenbaum, J.), "[a] colorable basis means that [Plaintiffs] must come forward with something more than the mere averments in [their] [C]omplaint in support of [their] claim." Severtson v. Phillips Beverage Co., 141 F.R.D. 276, 278-79 (D. Minn. 1992) (Alsop, J.).

Plaintiffs have met their burden here. HCI's argument regarding the different modes of transportation putative Plaintiffs may have taken to get to the remote jobsite is irrelevant at best. Plaintiffs have established that they are at least colorably similarly situated and

8

were the victims of a single policy or decision on HCI's part with respect to the Mayo Clinic project and the April 30 cancelled training.

**D.     Collective Representatives and Counsel**

Plaintiffs request that the Court appoint them to represent the collective and appoint their counsel as counsel for the collective. But they offer no argument in support of this request, and the Court can find no cases discussing such appointment at this stage in the litigation. The request is therefore denied without prejudice.

**E.     Discovery and Notice**

Plaintiffs ask the Court to order HCI to provide personal information for all members of the putative collective. But the information Plaintiffs demand includes sensitive information such as each individual's social security number. It is inappropriate for the Court to order the production of such private information. Rather, HCI shall provide Plaintiffs with putative collective members' names, mailing addresses, and last known email addresses.

The Court agrees with HCI that Plaintiffs' proposed notice program is inappropriate, especially given the limited collective to be certified in this case. Mailing and e-mailing notice of the action is sufficient, and HCI need not provide notice with employees' paychecks. A 60-day notice period is also sufficient, and thus a reminder mid-way through that period is unnecessary.

HCI raised a number of objections to the original form notice and consent Plaintiffs submitted. The revised collective definition resolves some of these objections, but many others remain. Most of HCI's remaining objections, however, rely on authority from courts outside the Eighth Circuit, and thus are not binding nor particularly persuasive. The Court

encourages the parties to come to an agreement on a form of notice and consent, and on a notice program, that comply with the Court's directives. The parties should submit the notice, consent, and proposed notice program for approval when submitting the revised collective definition. The Court will authorize notice to the collective after receipt of the parties' proposed notice program.

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED that** Plaintiffs' Motion for Conditional Certification (Docket No. 22) is **GRANTED in part** and **DENIED in part**.

Dated: February 5, 2020

                                          *s/ Paul A. Magnuson*
                                          Paul A. Magnuson
                                          United States District Court Judge